UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

AMIEL CUETO,                          )
                                      )
              Petitioner,             )
                                      )
      vs.                             )          3:02-cv-00777-JDT
                                      )
E. A. STEPP, Warden,                  )
                                      )
              Respondent.             )


**Entry Discussing Petition for Writ of Habeas Corpus**[1]

For the reasons explained in this Entry, the petition of Amiel Cueto ("Cueto") for a writ of habeas corpus is **denied and this action is dismissed for lack of jurisdiction**.

## I. Background

After a jury trial, Cueto was convicted in this court of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and three counts of obstruction of justice, in violation of the omnibus clause of 18 U.S.C. § 1503. Cueto's convictions and sentences were affirmed on appeal in *United States v. Cueto*, 151 F.3d 620 (7th Cir. 1998), *cert. denied*, 536 U.S. 1016 (1999). In that appeal, Cueto argued that: (1) the conviction for conspiracy to defraud was invalid because of constitutional infirmities and because of insufficiency of the evidence; (2) the convictions for obstruction of justice were also invalid because of constitutional infirmities and

_____

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

insufficiency of the evidence; (3) he was entitled to a new trial because the district court erroneously excluded certain defense evidence; and (4) his sentence should be vacated and remanded because the trial court erroneously calculated his sentence. *Id.* at 624.

Following the conclusion of his direct appeal, Cueto filed an action for collateral relief pursuant to 28 U.S.C. § 2255. In that motion, he raised six separate grounds for relief:

- The government's failure to produce a letter from the U.S. Attorney to the Administrator of the Illinois Attorney Registration and Disciplinary Commission constituted a *Brady* violation and compelled the defendant to bear witness against himself in violation of the Fifth Amendment of the United States Constitution.

- The introduction of testimony which the government knew was perjured could have affected the judgment of the jury and on this basis alone, a new trial is required.

- Previously disclosed evidence reveals that the trial judge was biased or that there was an appearance of Rule 11 impropriety requiring a new trial.

- An intervening change of law rendered co-defendant Albert Romanik's grand jury testimony inadmissible, requiring a new trial for Cueto.

2

- The sentence should be vacated in that 87 months imprisonment and an $80,000 fine are in excess of the maximum allowed by law, and the trial court did not have jurisdiction to impose an excessive sentence.

- Cueto had a good faith belief that other *Brady* violations occurred, which could be brought to the trial court's attention through discovery or an evidentiary hearing.

This motion was denied by the trial court in an unpublished order, *United States v. Cueto,* No. 99-831-SNL (S.D. Ill. Aug. 18, 2000), and both the trial court and the Court of Appeals declined to issue a certificate of appealability.

Cueto now seeks habeas corpus relief pursuant to 28 U.S.C. § 2241(c)(3). The United States, through Cueto's past custodian, has opposed the habeas filing, and Cueto has replied.

**II.  Habeas Claims**

Cueto asserts eleven individual points as reasons that his convictions should be vacated. The points are interrelated as will be noted. The central premise to virtually all of Cueto's arguments is his view of the structure of the charges of convictions and the nature of the evidence upon which he was convicted. Simply put, he contends that he was convicted for publishing a newspaper and for doing other lawful acts.

**Point One:**  Cueto contends that all the matters underlying his convictions relate to his publication of a newspaper entitled "*The Eastside Review*."  He contends that it is

the publication of the newspaper which is the overt act alleged to complete the conspiracy, and which is also the corrupt motive underlying the obstruction counts of which he was convicted.  He asserts that his activities related to the publication of the newspaper were protected under the First Amendment.  He further contends that the decision by the Ninth Circuit Court of Appeals in *Planned Parenthood v. American Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) created a new rule of law that excludes from First Amendment protection only statements or threats which are done with malice and specific intent in communicating true threats to kill, assault, or do bodily harm to individuals.

**Point Two:**  Cueto contends that he could not be convicted of obstruction of justice because his actions which are alleged to be "corrupt endeavors" occurred when there were no judicial proceedings in existence for him to have obstructed. He also contends that it was impossible to conspire or agree to obstruct judicial proceedings that were not in existence. As a final attack on Count 2, Cueto asserts that the last act which could have been part of the conduct underlying that conviction was the filing of his brief in the Supreme Court on May 31, 1994.  The maximum penalty for a violation of 18 U.S.C. § 1503 was 60 months imprisonment and a $5,000 fine, yet his sentence on that count exceeded those limits both as to incarceration and fine. He repeats this assertion as to Counts 6 and 7, and as to the fine of $20,000 on Count 1.

As to Count 6, Cueto contends that the acts associated with Count 6 occurred before the 1994-1 grand jury was empaneled and argues that there is an evidentiary insufficiency relating to Count 6. Count 7 is challenged by Cueto by contending that no false pleadings or papers filed in the racketeering prosecution were identified and linked

4

to him. He contends that, at best, Count 7 could be based on a motion to recuse that was to be filed by attorney Alessi on behalf of defendant Erin Griffin in the racketeering prosecution, yet, technically, even that motion was not filed because it was returned unfiled to counsel. He also argues that if he cannot be convicted of the substantive offenses of Counts 2, 6 and 7, he cannot be convicted of conspiracy to obstruct the proceedings referred to in those counts.

**Point Three:**  Cueto contends that the prosecutor assigned to his case should have been disqualified because of her involvement in other litigation, that the prosecutor acted in an irregular manner when the charges against Cueto were filed, and that these circumstances spilled over into evidentiary rulings made during the trial.

**Point Four:**  Cueto contends that he was denied his right to self-representation.

**Point Five:**  Cueto contends that Judge Stephen Limbaugh unduly restricted Cueto's testimony on direct examination and that he was denied the right to testify. He also contends that error was committed when his counsel were compelled to disclose that he was going to testify.

**Point Six:**  Cueto contends that his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor was denied.

**Point Seven:**  Cueto contends that his right to confront witnesses was denied because a grand jury transcript of Albert Romanik's testimony was admitted into evidence over his objection.  Romanik did not testify at trial. Cueto also claims that the

prosecutor engaged in misconduct by stating to the jury that Romanik's guilty plea was vicariously applicable to Cueto.

**Point Eight:**  Cueto contends that he was denied the right to confront witnesses with respect to Thomas Venezia.

**Point Nine:**  Cueto contends that he was denied the right to a trial.  In essence, this is the aggregate of the preceding errors he asserts, especially Points 2, 4, 5, 6, 7 and 8.  Cueto argues that the combination of all of those errors resulted in his not actually having a trial.

**Point Ten:**  Cueto contends that he was denied a fair trial because Judge Limbaugh was prejudiced against him.

**Point Eleven:**  This point was raised in Cueto's filing on November 24, 2003, in an Addendum to his Memorandum in Support of the Count One Application for Writ of Habeas Corpus. In this point, Cueto argues that the Indictment which was the subject matter of the trial was not the indictment that was returned by the Grand Jury.

**Non-claims:**  At the conclusion of his memo in support of his Amended Application for Writ of Habeas Corpus (pages 178-179), Cueto indicates that many other errors could have been raised through a habeas corpus proceeding, as he says, and "to argue them all would fill a tome longer than *War and Peace*."

### III.  Preliminary Matters, Post-Hearing Motions, and Further Findings

#### A.  Forensic Testing and Additional Discovery

At the close of the evidentiary hearing and argument conducted on April 30, 2004, Cueto requested leave to have an audio tape and the recording equipment subjected to forensic testing. The requested testing is for the purpose of supporting Cueto's position that either he was not named in the indictment returned on July 18, 1996, or that the indictment returned on that date was a different indictment than that unsealed on August 9, 2005, all in *United States of America v. Amiel Cueto, et al.*, Court No. 96-30070-SNL.

The court finds from the trial court's records and from the evidence at the hearing of April 16, 2004, however, that Cueto was charged in the indictment contained in the court's records. That indictment was returned on July 18, 1996. It was unsealed on August 9, 2005. Further explanation of the circumstances under which this indictment was returned, and the manner in which it was processed by the Clerk's Office, is set forth in Part III.C. of this Entry. The court's finding on this point makes the requested forensic testing an exercise in futility and a waste of time and other resources. Because an indictment carries a "presumption of regularity," *United States v. R. Enters., Inc.,* 498 U.S. 292, 300-01 (1991), based on the present state of the record, the court concludes that in this case the indictment was properly returned and it will not indulge Cueto in what can only be described as a fishing expedition. The request for forensic testing of the cassette tape and recording equipment is **denied**. The same conclusion is reached, and

the same ruling is made, with respect to the possible depositions of persons not called as witnesses on April 30, 2004.

### B.  Post-Hearing Disclosure by United States and Motions

As the parties recognize, and as a refrain which must be repeated throughout this decision, the court's first task in this case is not to fix errors, nor to revisit points at which challenged decisions were made, nor to opine on whether it would have ruled differently, but to first of all determine whether the habeas court has the authority to make such inquiries given the circumstances of the case. *See Sherman v. Cmty. Consol. Sch. Dist. 21*, 980 F.2d 437, 440 (7th Cir. 1992) ("judges must consider jurisdiction as the first order of business."). Not even by agreement could the parties enlarge the court's jurisdiction—and, of course, the United States has consistently argued that jurisdiction is absent.

Following the proceeding on April 30, 2004, the United States filed certain material under seal. This material consisted of a transcript of the grand jury testimony of Congressman Jerry Costello given on April 15, 1996. One subject of that testimony was Congressman Costello's meeting with St. Clair County State's Attorney Robert Haida. The United States now concedes that the grand jury testimony of Congressman Costello could be read as partially contradicting the testimony given by Haida at Cueto's trial. The United States submitted this material with the view that this transcript "should have been disclosed to the defense under the general principles of *Brady v. Maryland*, 373 U.S. 83 (1963)." "[T]he suppression by the prosecution of evidence favorable to an accused upon

8

request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.[2]

The transcript of Congressman Costello's April 15, 1996, testimony before the grand jury need not be disclosed at this point. Apart from its content and potential use to Cueto, one prong of a so-called *Brady* violation is that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *United States v. Aldaco*, 201 F.3d 979, 982-83 (7th Cir. 2000). In this instance, Cueto knew about Congressman Costello's testimony before the grand jury and could have elicited information concerning that testimony, and hence the basis for contradicting any part of Mr. Haida's testimony, by interviewing the Congressman before trial or calling him as a witness at trial. Cueto did neither of these things.[3] Nonetheless, it is clear from assertions made by Cueto prior to, during, and after trial that Cueto knew that Costello's testimony would have been favorable to him. Additionally, Cueto plumbed the depths of Congressman Costello's testimony before the grand jury previously, in the § 2255 motion itself, and any effort to do so again by capitalizing on the United States' in camera filing of September 30, 2004, would come too late. *Taylor v. United States*, 3:04-CV-1865-P, 2004 WL 2479913 (N.D. Tex. Nov. 2, 2004) ("Nor does Petitioner's *Brady* claim fall under the savings clause. His *Brady* claim is not (i) based on a retroactively applicable Supreme Court decision which established that the petitioner may have been convicted of a nonexistent offense, and (ii) that was foreclosed by circuit law at the time

---

[2] Current counsel for the United States is uncertain whether the transcript or even the substance of the testimony was disclosed in connection with the trial.

[3] Perhaps Cueto also could have sought to depose Congressman Costello pursuant to Federal Rule of Criminal Procedure 15(a), citing exceptional circumstances.

when the claim should have been raised in the petitioner's trial, appeal or first § 2255 motion.") (citing *Reyes-Requena v. United States,* 243 F.3d 893, 904 (5th Cir. 2001)). Indeed, Cueto's "point 6" in his § 2255 motion includes explicit reference to the undisclosed grand jury testimony of Congressman Costello. In explaining why he did not call Congressman Costello as a witness at trial, Cueto states on pages 59-60 of the Memorandum he filed on June 1, 2000, in No. 99-831-SNL, that:

> The defense was faced with the dilemma of whether the assertions of the Congressman's lawyers–that the grand jury testimony was exculpatory–were correct; or whether the pleadings and assertions of the Government–that Congressman Costello's testimony was inculpatory–were true. The Government had not disclosed the Costello grand-jury transcript as it was bound to do under <u>Brady v. Maryland</u>, if the testimony of the Congressman was exculpatory or impeaching. The defense finally decided to take the Government as [sic: at] its word. The defense could not risk calling Congressman Costello if the testimony were in fact inculpatory. . . .

> Now however, given the <u>Brady</u> violations the accused has discovered since his conviction and appeal, there should be little doubt that the Congressman's grand-jury testimony was indeed exculpatory, and probably impeaching of Government witnesses, including Robert Haida and Phil Montalvo. It seems apparent that the Government suppressed the transcript and falsely pleaded that the Costello testimony was inculpatory, in order to deceive the defense into not calling the Congressman.

Thus, the Congressman's grand jury testimony as a possible basis for impeaching Robert Haida at trial was very much associated with Cueto's § 2255 action. The claim was rejected. He sought production of Congressman Costello's grand jury testimony. That request was denied. Each of these subjects was discussed on pages 27-30 of the August 18, 2000, *Memorandum and Order* in *United States v. Cueto*, No. 99-831-SNL. This is not a proceeding in which relief can be sought or awarded predicated on error in the disposition of the claim in the § 2255 action. Accordingly, the United States'

submission of the transcript of Congressman Costello's grand jury testimony could not now be a basis for relief.

Cueto also filed a series of motions following the proceeding on April 30, 2004, attempting to restate and support the merits of his claims with additional authority. No restatement of his claims at this point is warranted, nor does the proposed restatement of his claims alter the nature of the claims. The proposed additional authority relates entirely to the merits of certain of Cueto's claims, but this is not germane because of the conclusion reached in Part V of this Entry relative to the question of jurisdiction. Because that conclusion is that jurisdiction is absent, beefing up arguments regarding the claims themselves is of no value to the parties or to the court. These motions, whether submitted in a direct form or through the veil of "motion for leave to . . ." are each **denied**.

### C.  Findings of Fact

Familiarity with the indictment filed with the clerk on July 18, 1996, with the Court of Appeals' decision in Cueto's direct appeal, and with Judge Limbaugh's decision in the § 2255 action is assumed. The findings of fact from the prior judicial decisions are incorporated herein by reference, because they are pertinent to the proceeding, because they are fully supported by the expanded record, and because Cueto has not shown that the facts are other than as recited in those decisions. However, in order to make clear the exposition which is required of Cueto's many claims, certain additional findings are made. These findings are based on the pleadings, on the evidentiary and expanded

11

record, and on the court's file in the underlying criminal action, as well as the file in the earlier § 2255 action:

1.      Cueto was charged with seven counts in an Indictment returned in this court on July 18, 1996. The other individuals named as defendants in the Indictment were Romanik and Venezia.

2.      After various pretrial proceedings, including the assignment of the Honorable Stephen Limbaugh from the Eastern District of Missouri as judge, Cueto's trial commenced on April 7, 1997, and concluded on June 11, 1997. Cueto was convicted of the four offenses already noted, was found not guilty of three other charges, and was sentenced on September 17, 1997.

3.      In July 1996, there was an orderly procedure whereby the Clerk's Office would process grand jury returns. Customarily, one of two United States Magistrate Judges would "take" the return of the grand jury from the United States Attorney. This would occur in open court, with a representative of the Clerk's Office present. The United States Attorney would inform the court of the action of the grand jury, i.e., return a "true bill" or a "no bill." In the case of a "true bill," an indictment was produced. The court would be informed of the particulars of the indictment, meaning who was named as a defendant and what charges had been brought, and also of incidental matters, meaning whether a warrant was requested and/or whether the United States sought to seal the indictment. Deputy Clerk Jill Swift was present during the returns made on July 18, 1996, and prepared courtroom minutes of the proceedings conducted on that date.

4.      On July 18, 1996, the Clerk of the Court was Stuart O'Hare. Mr. O'Hare represented the Clerk's Office on that date during a grand jury return made in the late morning before Magistrate Judge Cohn. Among the items as to which a return was made was the issuance of an indictment by the grand jury described in numbered paragraph 1 above.

5.      Mr. O'Hare took the indictments which were in the grand jury return made on the morning of July 18, 1996, and delivered them to Margaret Ruth Brooks, who at that time was the Operations Supervisor of the Clerk's Office. Prior to this time, no case number had been assigned to the indictments, nor had the clerk processed the indictments in any other fashion, because prior to the return being made the indictments had been in the possession of the United States Attorney.

6.      Upon receiving the indictments from Mr. O'Hare, Ms. Brooks checked them for completeness in terms of paperwork. The paper she expected from each indictment included a grand jury concurrence sheet, which is prepared by the United States Attorney and contains the signatures of the members of the grand jury who had voted to issue the indictment. This concurrence sheet is a voting record of the grand jury and is sometimes referred to as "a ballot."

7.      The indictment described in numbered paragraph 4 above (charging Thomas Venezia, Robert Romanik and the Petitioner *only*) was delivered to Ms. Brooks by Mr. O'Hare. The indictment, a multi-page document, was stapled when Ms. Brooks received it. The indictment was accompanied by a motion to seal the indictment. Magistrate Judge Cohn granted that motion in a written Order. The Order sealing the

13

indictment was delivered with the indictment to Ms. Brooks from Mr. O'Hare. Ms. Brooks

checked the papers to verify that the indictment had been signed by the grand jury

foreperson and the United States Attorney and that the foreperson had also signed the

grand jury concurrence. She found those signatures to be affixed to the respective

documents, as indeed they were. At this point, the indictment was filed with the clerk.

The filing of this indictment occurred at 1:51 p.m. on July 18, 1996. Deputy Clerk Linda

Cook assigned the case number 96-30070-WDS. The case designation was

subsequently changed to No. 96-30070-SNL upon the assignment of Judge Limbaugh to

the case.

8.      Typically, a sealed indictment would at this point be placed in a brown

envelope. That occurred here, although at some later point the indictment was not found

to be in the brown envelope. This could be explained, and probably occurred here by

someone in the Clerk's Office making a copy of the indictment for the United States

Attorney and not placing the indictment back into the envelope. The document reflecting

concurrence as to this indictment, however, was not where it was expected to be, but

was found in December 2003, in an area of the Clerk's Office in which sealed materials

were kept. That concurrence shows compliance with Rule 6(f) of the *Federal Rules of

Criminal Procedure*.[4]

9.      The indictment which was returned on July 18, 1996, and in which Cueto,

Romanik and Venezia were named as defendants, was unsealed on August 9, 1996.

That is the authentic indictment, meaning the same indictment which contained the

---

[4] Rule 6(f) states that: "A grand jury may indict only upon the concurrence of 12 or more
jurors. The indictment shall be returned by the grand jury, or through the foreperson or deputy
foreperson on its behalf, to a federal magistrate judge in open court."

14

charges returned by the grand jury in Magistrate Judge Cohn's courtroom on July 18, 1996.

## IV.  Applicable Law

Cueto seeks relief pursuant to 28 U.S.C. § 2241(c)(3). Cueto also invokes the writ of habeas corpus as preserved by the United States Constitution, separate from the statutory writ which exists in § 2241.

A writ of habeas corpus may be granted when it is established that the applicant "is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* Ordinarily, an action pursuant to 28 U.S.C. § 2255 is the exclusive means for a federal prisoner to attack his conviction. *Kramer v. Olson*, 47 F.3d 214, 217 (7th Cir. 2003); *Garza v. Lappin*, 253 F.3d 918, 921 (7th Cir. 2001). However, § 2241 may be utilized by a federal prisoner to challenge the legality of his or her conviction or sentence in those cases where § 2255 is "'inadequate or ineffective to test the legality of [the] detention.'" *Kramer*, 347 F.3d at 217 (quoting 28 U.S.C. § 2255 ¶ 5). This has been referred to as the "statutory escape hatch," *Longbehn v. United States*, 169 F.3d 1082, 1083 (7th Cir. 1999), but is referred to in this Entry as the savings clause. *See Kramer*, 347 F.3d at 217. A remedy pursuant to § 2255 is "inadequate" when its provisions limiting multiple § 2255 motions prevent a prisoner from obtaining review of a legal theory that establishes the petitioner's actual innocence. *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002). This means that "the focus is on procedures rather than outcomes." *Id.* Two elements are necessary to make the required showing:

[A petitioner] must first show that the legal theory he advances relies on a change in law that both postdates his first § 2255 motion (for failure to raise a claim the first time around does not render § 2255 "inadequate") and "eludes the permission in section 2255 for successive motions." *See In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998). Second, he must establish that his theory supports a non-frivolous claim of actual innocence. *See Taylor*, 314 F.3d at 835 ("Every court that has addressed the matter has held that § 2255 is 'inadequate or ineffective' only when a structural problem in § 2255 forecloses even one round of effective collateral review-- and then only when as in *Davenport* the claim being foreclosed is one of actual innocence."); *see also Cooper v. United States*, 199 F.3d 898, 901 (7th Cir. 1999) ("A valid claim of actual innocence would be enforceable under § 2241 . . . if relief under [§ 2255] was not . . . available.").

*Kramer*, 347 F.3d at 217. It is the prisoner's burden to prove that his remedy under § 2255 is inadequate or ineffective. *Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001) (per curiam); *Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999). The methodology for addressing Cueto's claims is straightforward: The nature of his claims as challenging his convictions has already been established. As to each claim, it must be determined whether Cueto has shown that his remedy via § 2255 is inadequate or ineffective. If not, then his petition must be dismissed for lack of jurisdiction, as in *United States v. Lloyd*, 398 F.3d 978 (7th Cir. 2005). If so, however, then to that extent his § 2241 claims must be addressed on their merits. *Grey-Bey v. United States*, 209 F.3d 986, 990 (7th Cir. 2000) ("[A] district court presented with a petition for writ of habeas corpus under § 2241 should analyze that petition on its own terms, without assuming that whatever cannot proceed under § 2255 also cannot proceed under § 2241[.]").

The savings clause of § 2255 ¶ 5 is to be applied in light of the intent of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") to replace the world of *Sanders v. United States*, 373 U.S. 1 (1963), "with an approach under which only defined circumstances permit successive collateral attacks." *Taylor v. Gilkey*, 314 F.3d at

836 (citing *Burris v. Parke*, 95 F.3d 465 (7th Cir. 1996) (en banc)). In considering the scope of collateral remedies remaining to federal prisoners after the AEDPA, "§ 2255 ¶ 8 means . . . that prisoners today are never *entitled* to multiple collateral attacks, so that their inability to obtain another round of litigation cannot demonstrate that § 2255 as a whole is 'inadequate or ineffective to test the legality of . . . detention.'" *Gray-Bey*, 209 F.3d at 990 (emphasis in original). Thus, in *Valona v. United States*, 138 F.3d 693 (7th Cir. 1998), the court observed that nothing in the statutory scheme under AEDPA "implies that a federal prisoner may use a petition under § 2241 to call into question the validity of a conviction or sentence that has already been subject to collateral review."

Federal law providing for collateral review of conviction and sentence does not guarantee that every prisoner will obtain a review on the merits of a constitutional claim, but that every prisoner will at some point have the *opportunity* for such review.  *See, e.g.*, *Wofford v. Scott*, 177 F.3d 1236, 1244 (11th Cir. 1999). "The essential point is that a prisoner is entitled to one unencumbered opportunity to receive a decision on the merits." *Potts v. United States*, 210 F.3d 770 (7th Cir. 2000).

There is no question concerning what Cueto is claiming in this action. He is claiming that his convictions are unlawful. However, there is a substantial question concerning whether the remedy sought by Cueto is available to him. He has invoked a statutory remedy wrapped in the appearance of a constitutional blanket. The United States disputes that this statutory remedy extends to the present circumstances or that the constitutional provision has any role.

17

## V.  Discussion

### A.  Remedy via Statutory Action for Writ of Habeas Corpus

Has Cueto shown with respect to his claims that his remedy via § 2255 is inadequate or ineffective? In answering this question with respect to each of Cueto's claims, three recurring points are noted. The first is the fact that Cueto would now face a procedural barrier in the trial court does not render his § 2255 remedy inadequate or ineffective. *Montenegro v. United States,* 248 F.3d 585, 594 (7th Cir. 2001) ("[t]he savings clause is not intended to save prisoners from the statutory restrictions delineated by Congress"), *overruled on other grounds by Ashley v. United States,* 266 F.3d 671, 672 (7th Cir. 2001); *In re Davenport,* 147 F.3d 605, 608 (7th Cir. 1998) (noting that it cannot be right and would nullify the AEDPA limitations if a prisoner, prevented from obtaining relief under § 2255, could simply turn to § 2241). The second is that the present proceeding is not one in which a claim presented in Cueto's direct appeal can be reconsidered–this court lacks both the authority to undertake such a mission and there would be no doctrinal justification for it. The third is the mere fact that an argument has not previously been made in either the direct appeal or the § 2255 action does not make the § 2255 remedy inadequate or ineffective.

**Point One:**  Cueto contends that all the matters underlying his convictions relate to his publication of a newspaper entitled "*The Eastside Review*."  He contends that it is the publication of the newspaper which is the overt act alleged to complete the

18

conspiracy, and which is also the corrupt motive underlying the obstruction counts of which he was convicted. He asserts that his activities related to the publication of the newspaper were protected under the First Amendment. The best manner in which to understand this claim is as a challenge to the sufficiency of the evidence, as a challenge to the nature of the evidence in relation to the crimes of which he was convicted, and as a challenge to the conduct in which he engaged relative to the conduct which could have been proscribed by the criminal statutes under which he was charged and convicted.

A challenge to the sufficiency of the evidence was made in Cueto's direct appeal. The evidence was found sufficient by the Court of Appeals:

> We recognize that Cueto may initially have been hired in his professional capacity to provide legal advice and representation, but it was equally reasonable for the jury to conclude from the evidence presented at trial that his representation also was undertaken for a criminal purpose in an attempt to protect the illegal gambling operation and to prevent government interference and that Cueto's role in the conspiracy was to use the power of his office as an attorney for the corrupt purpose of impairing, impeding, and obstructing the investigation, indictment, and prosecution of the illegal gambling and racketeering enterprise. Similarly, it was reasonable for the jury to conclude that Cueto agreed to participate in this scheme for his personal financial gain; the income generated by Venezia's illegal gambling operation was used to fund additional business ventures pursued in partnership with Cueto. Examining the evidence in the light most favorable to the government, we conclude that a rational jury could have found that the government proved the elements of § 371 beyond a reasonable doubt and that Cueto conspired with others and purposefully and knowingly participated in a corrupt scheme to defraud the United States.

*United States v. Cueto*, 151 F.3d 620, 636 (7th Cir. 1998), *cert. denied*, 536 U.S. 1016 (1999).

Cueto's argument that he engaged in lawful conduct is a rehash of the simply-practicing-law argument he presented in his direct appeal. The sort of innocence for which the constitutional claim to collateral relief via the savings clause would be available occurs when, even if the trier of fact believed everything charged in the indictment, these acts just do not constitute a crime. *See Bousley v. United States*, 523 U.S. 614 (1998); *Davis v. United States*, 417 U.S. 333 (1974). Cueto makes such an argument, but only supported by his view of the evidence. When the evidence is viewed as the Court of Appeals and quite obviously the jury saw it, Cueto's argument does not hold water.[5] Furthermore, the statutes he was convicted of violating have not undergone substantial revision or interpretation, nor have they been revoked, since the time of his conduct or trial, in a manner warranting retroactive relief. *In re Davenport* 147 F.3d at 611 ("A federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion."). This court need not revisit an issue previously raised and decided with respect to a habeas petitioner. *See Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) ("Although *res judicata* does not apply in § 2255 proceedings, the court may still exercise its discretion not to reconsider issues already decided at trial, on direct appeal, or in a prior § 2255 proceeding."). There is no possibility that Cueto's convictions hinge on conduct Congress never intended to criminalize.

------------------

[5] Moreover, Cuteto conveniently ignores the fundamental concept that an overt act, committed in furtherance of a conspiracy, can be an act that is, by itself, a legal act, so long as it furthers a criminal conspiracy. *Braverman v. United States*, 317 U.S. 49, 53 (1942). Similarly, § 1503 penalizes even legal acts committed with a corrupt motive. *Cueto*, 151 F.3d at 631.

**Point Two:**  Cueto contends that he could not be convicted of obstruction of justice because his actions which are alleged to be "corrupt endeavors" occurred when there were no judicial proceedings in existence for him to have obstructed. He also contends that it was impossible to conspire or agree to obstruct judicial proceedings that were not in existence.

Cueto argues that he presented that argument in his direct appeal, but the Court of Appeals "converted" his impossibility argument into a sufficiency of the evidence argument. This is a direct challenge to the adequacy of the appellate court's treatment of his appeal.  His suggestion that he can pursue collateral challenges to his conviction until he receives a decision which both recognizes the claim in the manner he presents and resolves the claim in a manner he finds correct or persuasive is absurd. Although in the *Sanders* "world," see *Taylor*, 314 F.3d at 836, such a strategy might be conceivable, in the world of the AEDPA that is no longer the case. *Jiminian v. Nash,* 245 F.3d 144, 147-48 (2d Cir. 2001) (§ 2241 relief not available because petitioner could have raised claim on direct appeal or in prior § 2255 attack, thus § 2255 remedy not inadequate or ineffective); *Longbehn v. United States,* 169 F.3d 1082, 1083 (7th Cir. 1999) (same).

**Point Three:**  Cueto contends that the prosecutor assigned to his case should have been disqualified because of her involvement in other litigation, that the prosecutor acted in an irregular manner when the charges against Cueto were filed, and that these circumstances spilled over into evidentiary rulings made during the trial. Prior to trial, moreover, Cueto unsuccessfully sought dismissal of the Indictment against him on the ground that the United States Attorney had a conflict of interest. He relies on *Young v.*

*United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 810 (1987), in which a plurality of the Supreme Court concluded that the appointment of a private prosecutor is structural error not subject to harmless error analysis, to support this claim.

Cueto explains that this claim could not have been included in his direct appeal because the record on the motion to dismiss, which was denied without a hearing, was inadequate to support the claim, and that it was not presented in his § 2255 motion because to have done so would have resulted in additional charges being filed against him. He argues that these circumstances constitute "cause" for failing to present the claim at an earlier point. However, his assertion that he was barred from raising this earlier because of the fear of additional changes is based solely on his bald conclusions and no facts. Again, the Petitioner assumes a result without a basis.

Cueto's attempt to show "cause," especially in relation to the § 2255 action, is lame. It is, moreover, beside the point. The test for "inadequate or ineffective" under § 2255 ¶ 5 is not "cause and prejudice." Either the direct appeal or the § 2255 would have been an appropriate vehicle through which to raise the claim. A speculative fear that his opponent would try to base criminal charges on the Petitioner's claims of error does not satisfy this standard.

**Point Four:**  Cueto contends that he was denied his right to self-representation. He claims that he wanted to represent himself along with his counsel and that Judge Limbaugh refused to allow him to have hybrid representation.

Cueto contends that *McKaskle v. Wiggins*, 465 U.S. 168 (1984), guarantees the right of hybrid representation. Not so. The trial court is not required to permit "'hybrid' representation," as a "defendant does not have a right to choreograph special appearances by counsel."  *Id.* at 183.

This claim, in any event, is fully typical of the type of error which could have been presented in Cueto's direct appeal. *See, e.g.*, *United States v. Chavin*, 316 F.3d 666, 671-72 (7th Cir. 2002). Cueto's explanation for not raising this in earlier proceedings is that to have raised such an argument would have resulted in another obstruction indictment. This explanation is less than feeble, for there is not the slightest legal or factual basis for supposing that he would have again been charged with crimes against the United States had he expanded the arguments he elected to present in his direct appeal to include the claim that his right to self-representation was violated. His unfounded speculation about this, again, does not make it so. If this claim had not been available in Cueto's direct appeal, moreover, he could have presented it in his § 2255 action under certain circumstances. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) ("[a]n issue not raised on direct appeal is barred from collateral review absent a showing of both good cause for the failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice") (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)).

As to the fourth claim, therefore, the court concludes that Cueto's remedy through § 2255 was not inadequate or ineffective to test the legality of his conviction.

23

**Points Five and Six:**  Cueto contends that Judge Limbaugh unduly restricted Cueto's testimony on direct examination and, therefore, he was denied the right to testify. He also contends that his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor was denied. What he means through this claim is that a bevy of defense witnesses were not permitted to testify.

The assignment of error relating to the exclusion of a defendant's proffered evidence at trial, even when that exclusion is lodged as the violation of a defendant's right to testify or to compulsory process, is fully within the norm of appellate practice. *E.g.*, *United States v. Gant*, 396 F.3d 906 (7th Cir. 2005). Indeed, Cueto challenged three such rulings in his direct appeal. 151 F.3d at 636-38. He also argued that his Sixth Amendment right to confront witnesses was violated through a restriction on his cross-examination of Venezia with his grand jury testimony. *Id.* at 638. Other evidentiary rulings, if preserved, could have been included as error on appeal. Cueto argues otherwise, stating that for him to have done so would have resulted in an additional indictment against him for obstruction. He also states that he would have been acquitted if the witnesses had testified.

Cueto's showing is inadequate. He was not indicted for filing an appeal, nor for presenting certain arguments in that appeal. There is not the slightest legal or factual basis for supposing that he would have again been charged with crimes against the United States had he expanded the arguments he elected to present to include the claims that his effort to introduce the testimony of certain individuals and his own testimony were curtailed by Judge Limbaugh's rulings during the course of the trial. As to

24

the second factor Cueto offers, this is the grist of everyday appellate practice. There is the suggestion of error in the appellate decision, but that is not a showing that § 2255 is inadequate or ineffective. It does not suggest any infirmity or deficiency in the procedure available to Cueto via § 2255 or, in this instance, in his direct appeal.

As to the fifth and sixth claims, therefore, the court concludes that Cueto's remedy through § 2255 was not inadequate or ineffective to test the legality of his conviction.

**Point Seven:**  Cueto contends that his right to confront witnesses was denied because a transcript of Albert Romanik's grand jury testimony was admitted into evidence over his objection.

Romanik did not testify at trial. The rationale behind the admission was *Federal Rule of Evidence* 801(d)(2)(E), a statement of a co-conspirator during and in furtherance of the conspiracy. Cueto contends this denied him the right of cross-examination, and if he had been able to confront this testimony, he could have shown that it was true, rather than false as contended by the government. Cueto contends that the decision in *Lilly v. Virginia*, 527 U.S. 116 (1999), is an intervening change of law which rendered Romanik's grand jury testimony inadmissible. This claim does not support relief on that basis, however, because (a) the present law on this point is expressed in *Crawford v. Washington*, 541 U.S. 36 (2004), and (b) the Seventh Circuit Court of Appeals has very recently held that even *Crawford* does not apply retroactively. *Bintz v. Bertrand*, 403 F.3d 859, 867 (7th Cir. 2005).

Cueto makes one undeveloped comment that prosecutor Miquelon argued to the jury that Romanik's guilty plea was vicariously applicable to him. This was raised in Cueto's § 2255 action. The argument that there was error in the resolution of the claim does not suggest structural deficiency in the § 2255 process, and the claim itself self-evidently reveals that Cueto does not rely on a change in law that post-dates his § 2255 motion. This is fatal to Cueto's effort to invoke the savings clause of § 2255.

**Point Eight:**  Cueto contends that he was denied the right to confront witnesses with respect to Thomas Venezia in two respects. He contends that the government agreed not to prosecute Venezia for a RICO murder.  Judge Limbaugh refused to allow the defense to cross examine Venezia regarding this aspect of the agreement.  Judge Limbaugh also refused to allow Cueto to confront Venezia with notes that Venezia had made during the initial criminal prosecution of him.

These are claims of trial error. Cueto asserts that the claim regarding the disallowance of the notes taken by Venezia during the initial prosecution of him was presented in his direct appeal, but was simply ignored by the Court of Appeals. Whether this is the case or not, these claims do not meet the standard of "inadequate or ineffective" as established in the Seventh Circuit and as previously explained and applied as to other claims.

**Point Nine:**  Cueto contends that he was denied the right to a trial. Cueto argues that the pervasive violation of his rights under the Sixth Amendment–*at trial*–was structural error (perhaps several times over, judging from his rhetoric) and this resulted in the proceeding which he acknowledges occurred not constituting a trial.

26

The state slogan of Illinois is "Land of Lincoln."  An epigram widely attributed to Abraham Lincoln is appropriate in this case:  How many legs does a dog have if you count his tail as a leg? Four. You can call a tail a leg if you want to, but it does not make it a leg. So it is with Cueto's not-a-trial argument; he can call the proceeding something other than a trial, but if it was a trial his refusing to recognize that fact does not make the proceeding something other than a trial. The point is that Cueto de-labeling his trial does not change history, even though he argues that the history of his trial is replete with violations of his Sixth Amendment rights. This invites consideration of his dogmatic claim of structural error.

> There are two kinds of constitutional error at trial.  In *Arizona v. Fulminante,* 499 U.S. 279, 111 S. Ct. 1246, 113 L.Ed.2d 302 (1991), the Supreme Court recognized a distinction between structural defects, which require reversal, *per se,* and trial errors, which require a reviewing court to engage in harmless error analysis. Structural defects are "defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards."  *Id.* at 309, 111 S. Ct. 1246. A "structural error" applies to the entire trial and requires reversal because it "infects the entire trial process," *Brecht v. Abrahamson,* 507 U.S. 619, 630, 113 S. Ct. 1710, 123 L.Ed.2d 353 (1993).  Furthermore, a structural error will "'necessarily render a trial fundamentally unfair.' Put another way, these errors deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" *Neder v. United States,* 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Rose v. Clark,* 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L.Ed.2d 460 (1986)). A trial error, on the other hand, is an "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307-08, 106 S. Ct. 3101. A right is "substantial" when it is one of the pillars of a fair trial.  Trial before an orangutan, or the grant of summary judgment against the accused in a criminal case, would deprive the defendant of a "substantial" right even if it were certain that a jury would convict. *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S. Ct. 2078, 124 L.Ed.2d 182 (1993).

*Harrison v. Anderson*, 300 F. Supp. 2d 690, 698-99 (S.D. Ind. 2004), *aff'd*, 428 F.3d 652 (7th Cir. 2005).

Structural errors have been found in a "very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468-69 (1997) (citing precedent finding structural errors for: (1) a total deprivation of the right to counsel; (2) lack of an impartial trial judge; (3) unlawful exclusion of grand jurors on the basis of race; (4) denial of the right to self-representation at trial; (5) denial of the right to a public trial; and (6) an erroneous reasonable doubt instruction to the jury). Cueto's sense of the errors he believes occurred before and during his trial do not qualify as structural error, for they are not among the categories noted in *Johnson,* and because his contentions are case-specific. *See Neder*, 527 U.S. at 14 (structural errors implicate basic protections, and render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence; it is a categorical determination).

There was, of course, a trial, and Cueto participated in every phase of it. The advent of structural error as a subset of constitutional error preceded Cueto's trial by six years. Structural error can be argued in a direct appeal, as was the avenue taken in *Johnson* and in *Neder,* just to name two of the cases already mentioned in this discussion. Further, at least in the context of a state prisoner seeking federal habeas corpus relief, *Ward v. Hinsley*, 377 F.3d 719, 725 (7th Cir. 2004), explains that such errors are not thereafter exempt from the doctrine of procedural default. As with several of his other claims, Cueto claims that he could show cause for and prejudice from his failure to present this claim previously, but this is not the proper test.

28

In an addendum, Cueto states that *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), is an intervening change of law which implicates the structural error rule of *Sullivan v. Louisiana.* Based on *State Farm*, he contends that a person cannot be punished criminally for conduct which is lawful. It is true that in *State Farm* the Supreme Court noted that a state cannot punish a defendant for conduct that may have been lawful where it occurred, 538 U.S. at 421, but this was hardly a change in the law. The lawfulness of Cueto's conduct has already been fully assessed, both through his jury trial and in his direct appeal. There is no intervening case decision which draws this into question.

**Point Ten:**  Cueto contends that he was denied a fair trial because Judge Limbaugh was prejudiced against him.

Criminal defendants have a constitutional right to be tried before a fair and impartial judge. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). The due process clause "requires that a defendant receive a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Id.* (citations omitted); *see also In re Murchison,* 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases.").

Two statutes are relevant here: 28 U.S.C. § 144 requires recusal of a judge when there is actual personal bias or prejudice, while 28 U.S.C. § 455(a) requires a judge to recuse himself when his presiding over a case would create an appearance of bias. *United States v. Troxell*, 887 F.2d 830, 833 (7th Cir. 1989).

29

The assertion of judicial bias, far from being asserted at this late date, should have been asserted as soon as a record was available to Cueto to support such a claim. *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993) (the motion must be filed "at the earliest moment after [the movant acquires] knowledge of the facts demonstrating the basis for disqualification"). This could have been before trial or, at the latest, in the direct appeal as to any ruling or event occurring before or at trial.

In this Circuit, appellate review of a judge's failure to disqualify himself under §455(a) may only be obtained by petitioning the appellate court for a writ of mandamus prior to trial. *See United States v. Horton*, 98 F.3d 313, 316-17 (7th Cir. 1996); *United States v. Balistrieri*, 779 F.2d 1191, 1205 (7th Cir. 1985). In contrast to 28 U.S.C. § 455(a), recusal under § 144 deals with actual bias and requires the moving party to file a timely and sufficient affidavit in support of the motion setting forth facts that would cause a reasonable person to question the judge's impartiality. *Balistrieri*, 779 F.2d at 1199.

Disqualification under 455(a) was not available once Cueto's direct appeal was concluded. *See New York City Hous. Dev. Corp. v. Hart*, 796 F.2d 976, 979 (7th Cir. 1986). Cueto failed to file a timely recusal request under § 144 as to any basis on which recusal could have been sought prior to the conclusion of the direct appeal. "A section 144 affidavit is not timely unless filed 'at the earliest moment after [the movant acquires] knowledge of the facts demonstrating the basis for such disqualification.'" *Sykes,* 7 F.3d at 1339 (quoting *United States v. Barnes*, 909 F.2d 1059, 1071 (7th Cir. 1990)) (internal quotation marks omitted). Cueto did file a motion to recuse in conjunction with his motion for relief pursuant to § 2255. The motion to recuse was denied by Judge Limbaugh, and

30

that ruling was available for appellate review along with the merits of the case. *Troxell*, 887 F.2d at 833. No appellate review occurred in an extended fashion, however, because no certificate of appealability was issued. The only reason such a certificate was not issued, however, is because both the district court and the Court of Appeals found that Cueto failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Appellate review did occur, however, to the extent that the Court of Appeals' denial of his request for the issuance of a certificate of appealability represented its conclusion that Cueto failed to demonstrate that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented were adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

It is therefore incorrect for Cueto to suggest that the judicial bias arguments were not fully available for development through the conclusion of the direct appeal, to the extent the basis for any such argument was known to him at that stage, or not available at all in the course of the § 2255 proceeding, when in fact the claim of judicial bias was asserted. Cueto suggests that his own views and those of his attorney in the § 2255 proceeding diverged on the subject of whether and how to assert the claim of judicial bias, but that is of no consequence under the Sixth Amendment, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir.), *cert. denied*, 117 S. Ct. 266 (1996), nor for any other discernible purpose here.

Although judicial bias is one of the rare forms of structural error which infects an entire proceeding, *see Harrison v. Anderson,* 300 F. Supp. 2d 690, 703 (S.D. Ind. 2004)

31

(citing cases), this claim is not exempt from the rules of procedural default. While procedural default is not precisely the gulf which must be bridged in order to challenge a conviction via § 2241, the point is that all the specifications of judicial bias were available to Cueto at some point during the course of the prosecution, the trial, the direct appeal, and the § 2255 proceeding. This is the antithesis of deficiency in procedures. *Tripati v. Henman*, 843 F.2d 1160, 1162-63 (9th Cir. 1988) (§ 2255 motion not inadequate or ineffective despite alleged bias on part of sentencing judge because defendant could move for judge's recusal or disqualification). This claim, moreover, is not one which suggests in any fashion that Cueto's convictions resulted in someone who is actually innocent to be convicted.

Although it would be easy, and fully justified, to conclude that Cueto's claim of judicial bias is entirely without foundation in this record, because "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)), the court must refrain from indulging that route.  As explained in *Garza v. Lappin*, 253 F.3d 918, 923 (7th Cir. 2001), "we must not confuse lack of substantive merit with lack of jurisdiction." To do so would be to reach the merits of the claim of judicial bias and thereby determine, either explicitly or implicitly, that the remedy available to Cueto through § 2255 was inadequate or ineffective. Because such a determination is not warranted based on the expanded record or the parties' arguments, this claim fails the savings clause test of § 2255.

As to the tenth claim, therefore, the court concludes that Cueto's remedy through § 2255 was not inadequate or ineffective to test the legality of his conviction.

**Point Eleven:**  Cueto argues that the Indictment which was the subject matter of the trial was not the indictment that was returned by the grand jury.

There is a general rule that an indictment "will not be the subject of independent scrutiny and is given a presumption of regularity." *United States v. Hart*, 513 F. Supp. 657, 658 (E.D. Pa. 1981); *see also United States v. Azad*, 809 F.2d 291, 295 (6th Cir. 1986) ("A presumption of regularity attaches to grand jury proceedings[.]"). The "mere speculation of irregularity is not enough to entitle the defendant to disclosure of grand jury material." *Hart*, 513 F. Supp. at 658 (citing *United States v. Budzanoski*, 513 F. Supp. 657, 658 (3d Cir. 1972)). Additionally, "[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits" and "[t]he Fifth Amendment requires nothing more." *United States v. Powell,* 823 F.2d 996, 1000 (6th Cir. 1987) (quoting *Costello v. United States*, 350 U.S. 359, 362-63 (1956)).

After a careful review of the record and indictment at issue, the court finds no indication that the indictment was not returned by the grand jury as indicated by the record. The court further finds that there was but one indictment returned in which Cueto was named as a defendant. Although in this case there has been considerable independent scrutiny, that effort has simply confirmed the presumption of regularity associated with the indictment returned on July 18, 1996, naming Cueto as a defendant. The events associated with the clerk's handling of the indictment and associated papers,

including the concurrence, after the indictment was returned had no effect on the existence or content of the indictment, and have not prejudiced Cueto or drawn into question the subsequent proceedings, including the trial, based on the indictment. *See United States v. Smith*, No. 02-20380 BV, 2004 WL 784521, at *3 (W.D. Tenn. Jan. 26, 2004) ("After a careful review of the record and indictment at issue, the court finds no indication that the indictment was not rendered by the grand jury after deliberation. The fact that the defendant allegedly was handed an unsigned indictment at some point after the grand jury proceedings has no bearing on the fact that the record contains a properly entered true bill reflecting both the grand jury foreman's signature and that of the prosecutor."). The Petitioner's convoluted hypothesis that a different four-defendant indictment was actually returned and subsequently mysteriously disappeared, to be replaced by the present one, does not have a scintilla of factual support. It is a fiction of a creative imagination, founded only in rumor and speculation, not credible or reliable evidence.

The argument that Cueto was not charged or that there were two indictments has been completely explored. The facts this court finds are contrary to the premise of this claim. This claim can therefore proceed no further.

**Non-claims:**  Cueto indicates that many other errors could have been raised through a habeas corpus proceeding, as he says, and "to argue them all would fill a tome longer than *War and Peace*." A tribunal is hardly compelled to address a matter which slung in this fashion onto a heap of what is already a repetitions, wide-ranging harangue, and this court declines to do so for at least the reason that notice pleading does not

34

suffice in an action for habeas corpus relief. *See Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002).

### B.  Remedy Directly Under the United States Constitution

Is there any constitutional basis for awarding Cueto relief based on his allegations?  Phrased differently, the question is whether, apart from the savings clause of § 2255 and the statutory writ authorized in § 2241, there is any basis in the Constitution itself for granting Cueto the relief he seeks. Although this argument surfaces throughout Cueto's papers, it cannot sustain his position.

At the outset, it must be recognized that the authority of the lower federal courts to issue a writ of habeas corpus is not "inherent" in the mere statutory existence of the lower courts. On the contrary, "the power to award the writ by any of the courts of the United States, must be given by written law." *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 94, 2 L.Ed. 554 (1807)).  *Accord Brown v. Allen*, 344 U.S. 443, 460, 73 S. Ct. 397, 408-409 (1953) ("Jurisdiction over applications for federal habeas corpus is controlled by statute").

> The only reference in the constitution to the writ of habeas corpus is found in Article I, section 9, which states: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Even if this clause represented a restriction on judicial, as opposed to legislative, power, the right to habeas review enshrined in the clause does not include the right to have judgments rendered by courts of competent jurisdiction reexamined in collateral proceedings. *See Lindh v. Murphy*, 96 F.3d 856, 867 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997) (noting that the writ known in 1789 was the pre-trial contest to the executive's power to hold a person captive, the device to prevent arbitrary detention without trial). In fact, the complete

35

denial of the writ of habeas corpus to challenge federal convictions would not violate the Constitution. *United States v. Anselmi*, 207 F.2d 312, 314 (3d Cir. 1953) ("[U]nder the common law in force when the Constitution was adopted, habeas corpus was not available to persons convicted of crime to test the legality of their conviction . . . [a]nd until [1867], this was the rule in the federal courts.").

*Graffia v. United States*, 264 F. Supp. 2d 674, 680 (N.D. Ill. 2003).

We held in *Lindh v. Murphy,* 96 F.3d 856, 867-68 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), that the writ protected by the Constitution is the writ known in 1789--the pretrial writ used to thwart unjustified detention by the executive branch--and not the statutory extensions of collateral review later enacted by Congress. What the legislature gave, it may withdraw. "The Suspension Clause is not a ratchet." *Lindh*, 96 F.3d at 868. *Accord, Swain,* 430 U.S. at 384-86, 97 S. Ct. 1224 (Burger, C.J., concurring); *Schneckloth v. Bustamonte,* 412 U.S. 218, 252-56, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell, J., concurring). Yet although § 2255 ¶ 5 turns out to be unnecessary to ensure the law's constitutionality, it remains in force as a statutory rule of decision.

*Taylor v. Gilkey*, 314 F.3d at 835.

Accordingly, there is no explicit provision in the United States Constitution which confers on a federal district court the jurisdiction to consider a collateral challenge to a conviction made by a federal prisoner. Cueto's assertion of a general constitutional basis for relief under Article 1, Section 9, Clause 2, of the United States Constitution is unavailing. *Benefiel v. Davis*, 403 F.3d 825, 827 (7th Cir. 2005) ("What is protected from suspension is the writ that limits a person's detention by the executive branch without trial. There is no constitutional entitlement to post-judgment collateral review by the inferior federal courts, let alone to unending rounds of such review.").

36

It might also be thought that Cueto cites this constitutional provision in order to widen the aperture of the narrow savings clause written into § 2255 ¶ 5. This possibility would also be unavailing, however, because § 2255's limitation of § 2241 habeas petitions does not violate the Constitution's provision against suspension of the writ of habeas corpus. *See Swain v. Pressley*, 430 U.S. 372, 381 (1977) (substitution of adequate and effective collateral remedy for federal prisoners not unconstitutional suspension of writ of habeas corpus because § 2255 provides "exact equivalent" of habeas corpus petition); *Kaufman v. United States*, 394 U.S. 217, 221-22 (1969) (§ 2255 intended to provide remedy "exactly commensurate" with that provided by habeas corpus); *United States v. Brooks*, 245 F.3d 291, 292-93 (3d Cir. 2001) (Suspension Clause not violated because petitioner had full opportunity to challenge his detention in District Court, and still may file original petition with U.S. Supreme Court).

## VI.  Conclusion

"Section 2255 is the primary collateral relief mechanism for federal prisoners, and the savings clause cannot create a detour around § 2255 such that § 2255 is rendered a nullity." *Reyes-Requena v. United States*, 243 F.3d 893, 901 n.19 (5th Cir. 2001). Cueto has failed to show that a motion for relief pursuant to 28 U.S.C. § 2255 was or is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255 ¶ 5. He has shown no independent constitutional basis for granting the relief he seeks. "The court's power to enter a judgment of any kind, in favor of either side, depends on the existence of" jurisdiction. *Tisza v. Commc'ns. Workers of Am.*, 953 F.2d 298, 300 (7th Cir. 1992). Once a court determines that it lacks jurisdiction, it must proceed no further.

*Illinois v. Chicago*, 137 F.3d 474, 478-79 (7th Cir. 1998). That is the case here. Based on the findings in Part III of this Entry and the discussion in Part IV, therefore, Cueto's petition for a writ of habeas corpus is denied and this action must be dismissed for lack of jurisdiction. This Entry determines that there is no jurisdictional basis to address the many documents filed by the Petitioner and the prolix arguments and issues presented in them. Petitioner's energetic filing efforts were voluminous, but it is believed that this Entry mentions all of the Petitioner's filings of consequence. Regardless, any motion or other submission not specifically discussed in this Entry is **denied**.

An order of dismissal consistent with this Entry shall now issue.

ALL OF WHICH IS ENTERED this 15th day of December 2005.

_____
John Daniel Tinder, Judge
Sitting by Designation

Copies to:

Amiel Cueto
7122 West Main Street
Belleville, IL 62223

Gillum Ferguson
Office of the United States Attorney
Gillum.Ferguson@usdoj.gov